**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 4:16-CR-481-1 |
| | ) | |
| | ) | |
| VS. | ) | Houston, Texas |
| | ) | 2:21 P.M. |
| | ) | |
| JAMES MICHAEL CURTIS JOHNSON | ) | February 19, 2019 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**SENTENCING**

**BEFORE THE HONORABLE LYNN N. HUGHES**

**UNITED STATES DISTRICT JUDGE**

**VOLUME 1 OF 1**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

FOR THE GOVERNMENT:

    Mr. Michael Chu
    US Attorneys Office
    1000 Louisiana
    Suite 2300
    Houston, TX 77002
    Tel: 713-567-9693
    Email: Michael.chu@usdoj.gov

FOR THE DEFENDANT:

    Ms. Winifred Akins Pastorini
    Mr. Son Tran
    The Pastorini Law Firm
    440 Louisiana
    Suite 200
    Houston, TX 77002
    Tel: 713-236-7300
    Email: Windi@pastorinilaw.com

1 COURT REPORTER:

2     Ms. Kathleen K. Miller, CSR, RMR, CRR
      515 Rusk, Room 8004
3     Houston, Texas  77002
      Tel:  713-250-5087
4
  Proceedings recorded by mechanical stenography.
5 Transcript produced by computer-assisted transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    P R O C E E D I N G S

2    February 19, 2019

3    * * * * * * * * * * *

4    THE COURT:  Thank you.  Please be seated.

02:21:35  5    I apologize for the delay.  It could not

6  be helped, at least not by me.

7    United States of America vs. Michael

8  Curtis Johnson.

9    MR. CHU:  Good afternoon, Your Honor, Michael

02:21:53  10  Chu for the United States.

11    MR. TRAN:  Good morning.  Judge, Son Tran and

12  Windi Pastorini for Defendant Johnson.

13    THE COURT:  So are you his lawyer?

14    MS. PASTORINI:  No, sir.  This will be his

02:22:15  15  first experience in appearing before this Honorable Court,

16  and I -- we would both like to say a few words on behalf of

17  Mr. Johnson, if that's okay with you.

18    THE COURT:  Sure.

19    MS. PASTORINI:  Thank you, Your Honor.

02:22:26  20    THE COURT:  You're always welcome.

21    MS. PASTORINI:  Thank you.

22    (Defendant sworn by the Court.)

23    THE WITNESS:  Yes, sir.

24    THE COURT:  All right.  Please keep your voice

02:22:40  25  up.  And, Mr. Johnson, have you read this very long

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

```
 1 presentence report?
 2                THE DEFENDANT:  Yes, sir.
 3                THE COURT:  Have you talked to Ms. Pastorini
 4 about that?
 5                THE DEFENDANT:  Yes, sir.
 6                THE COURT:  Has she answered all of your
 7 questions?
 8                THE DEFENDANT:  Yes, sir.
 9                THE COURT:  Mr. Chu, does the government have a
10 recommendation?
11                MR. CHU:  Your Honor, we ask for the mandatory
12 minimum of 12 years.
13                THE COURT:  And other than that is easy to
14 count, is there a particular reason for it?
15                MR. CHU:  Your Honor, we believe that is
16 sufficient under the guidelines as well to just satisfy the
17 debt Mr. Johnson owes to society.
18                THE COURT:  All right.  Ms. Pastorini, do you
19 want to do it or do you want Mr. Tran?
20                MS. PASTORINI:  I am happy to say a few words.
21 Or why don't you go ahead and go first.
22                MR. TRAN:  All right, Judge.
23                THE COURT:  Do you have a recommendation?
24                MR. TRAN:  Judge, we would ask that you seek --
25 find a way to maybe possibly grant a variance.
```

02:23:07 (line 5)
02:23:17 (line 10)
02:23:30 (line 15)
02:23:55 (line 20)
02:24:05 (line 25)

1         THE COURT:  Speak up.

2         MR. TRAN:  That you possibly find a way to

3 grant a variance to see if we could join the two mandatory

4 minimums together at any way possible.  I am aware that

02:24:16    5 these are two mandatory minimum cases.  I just have several

6 arguments that I think that the Court should be allowed to

7 consider.

8         THE COURT:  Okay.  Well, one of them was that

9 he was -- is this the one where he was one day within

02:24:33   10 the --

11        MR. TRAN:  No, Judge.  There are other

12 arguments in addition to that.  For instance, first,

13 this -- Mr. Johnson, he accepted responsibility.

14        THE COURT:  And it doesn't matter.

02:24:45   15        MR. TRAN:  You're absolutely right, Judge.  But

16 it just seems unfair that someone who would put the

17 government through the burden of preparing for trial, an

18 expensive trial, would get basically the same amount of

19 time as Mr. Johnson, who did not do that.

02:25:00   20        Second --

21        THE COURT:  Mr. Chu doesn't prepare.  He's so

22 smart.  He does -- it's assigned to him and he announces

23 ready for trial.

24        MR. TRAN:  That may be true.

02:25:10   25        Second, on the issue of the 924(c), I

1 believe that the government -- we may be in agreement that

2 they probably see this as a self-defense case.  The 924(c)

3 count, however, makes no distinction between somebody going

4 and trying to commit a robbery and buying a weapon versus

02:25:30  5 somebody who was basically defending themselves from a

6 robbery.  And the 924(c) count just -- there is no credit

7 given for any of those cases.

8           THE COURT:  And what sort of robbery was going

9 on at the time he had to defend himself?

02:25:44  10           MR. TRAN:  Judge, Mr. Johnson was selling two

11 pounds of marijuana.  He did bring --

12           THE COURT:  Stop it right there.

13           MR. TRAN:  Okay.

14           THE COURT:  He had the gun because people in

02:26:01  15 the same business that he is just sometimes can't be

16 trusted.

17           MR. TRAN:  You're absolutely right, Judge.

18           THE COURT:  And so he had a gun to perpetuate

19 his drug deal, whichever way it was going.  It doesn't make

02:26:17  20 any difference.  That is not self-defense.  That's

21 defending your wrong against another wrongdoer.  It seems

22 like it's a tie.

23           MR. TRAN:  Yes, Judge, and I am not saying he

24 was not in the wrong, but there should be a distinction

02:26:33  25 between somebody who tries to rob someone versus someone

1  who never made that step to try to rob anyone, who was
2  merely just --
3           THE COURT:  Other than his customers of their
4  well-being, and sanity, and money.
02:26:50  5           MR. TRAN:  Other than those, Judge.
6           THE COURT:  Yes.
7           MR. TRAN:  Last, as far as the acceptance, kind
8  of going back to that, there's no question that Mr. Johnson
9  was the first to take a plea.  I know it's very hard to
02:27:07  10  distinguish or to really track or understand whether or not
11  his first plea -- or his plea possibly influenced the
12  others in the case to plea.  I know Mr. Johnson doesn't
13  believe so.
14           We believe that it may have had an effect.
02:27:21  15  To what extent, no one can know.
16           THE COURT:  I don't remember the role of the
17  others.
18           MR. TRAN:  The other people were
19  co-conspirators in the --
02:27:31  20           THE COURT:  I know.  They could be chopping up
21  bodies as a co-conspirator or just running errands and
22  buying pizza.
23           MR. TRAN:  Okay.  The --
24           THE COURT:  Different kinds of co-conspirators.
02:27:41  25           MR. TRAN:  I'm sorry, Judge.  There were

1  co-conspirators -- co-conspirators in the aggravated

2  identity theft case.

3          THE COURT:  Some of them were like actors.

4          MR. TRAN:  Actors, yes, Judge.  But, in that

02:27:54  5  aggravated -- aggravated identity theft case, not the

6  discharging of the firearm case.

7                And then last, our last argument, while we

8  did look at the first step backs, nothing falls squarely on

9  it.  We believe that there is a changing attitude towards

02:28:17  10  sentencing reform and mandatory minimums allowing the trial

11  court more discretion, and we believe that you should take

12  that possibly into consideration as well.

13          THE COURT:  Mr. Tran, I was a judge before we

14  had sentencing guidelines.  A presentence report was six to

02:28:43  15  eight pages, and there were two charts of distribution

16  diagrams of sentences for the particular crime in this

17  district and nationwide.

18                Texas and Arizona and southern California

19  have more bad immigration than drug cases coming across the

02:29:06  20  border.  Now, they may have an immigration problem in

21  Kansas, but it's -- theirs really tend to be lighter, so

22  you can compare how you fit with the nation, just the

23  national average.

24                That was about it.  And there was no math.

02:29:30  25  You had a statutory range, and the facts of the crime, and

1  you made a decision.  That's what we ought to go back to

2  doing.

3          But the problem with sweet Congress is

4  when they make a mistake, the supporters abandon it, but

02:29:52  5  there is never a constituency put together just to undo it.

6  And so things that have made no sense for 20 years, they

7  would probably agree, but they wouldn't take the time

8  because there are other things to do.

9          So it's sort of a bureaucratic version of

02:30:19  10  the old political sayings:  Friends may come, and friends

11  may go, but enemies accumulate.  So, I think that's the way

12  it is with laws.

13          I would be happy for the sake of

14  defendants, the people who have to support them, and who

02:30:43  15  are injured by them, to have a simpler, reasonable approach

16  to this.

17          But Mr. Johnson's report is still laying

18  right here.  It's 31 pages.  And then there are two or

19  three addenda, and other stuff, that's -- it's somewhere in

02:31:16  20  the low 40s.  It is completely unnecessary to do a fair

21  appraisal of Mr. Johnson.

22          And the number of appeals almost -- there

23  were very few criminal appeals relative to the number of

24  cases, and after the sentencing guidelines, the circuits

02:31:55  25  have huge banks of staff attorneys who do nothing but

1 guideline calculation appeals.

2          The statute does say they're guidelines,

3 but the appellate courts decided, no, they're not

4 guidelines, that they're almost conclusions.  That that's

02:32:18  5 the way it is going to be.

6          What else?

7          MR. TRAN:  That's it, Judge.

8          THE COURT:  Now, do you want to talk now or

9 later on when you talk about generalities rather than

02:32:37  10 calculations?

11         MS. PASTORINI:  Judge, I will do whatever

12 pleases this Honorable Court, but I just -- you know, I

13 just don't -- I cannot understand, for the life of me, just

14 like you were saying, why you have got a mandatory minimum

02:32:50  15 of ten, and a mandatory minimum of two.  I just don't

16 understand why they can't run together.

17         I mean, you give them the mandatory

18 minimum, that you -- I do understand that that's what the

19 law is, that that's why you can't, but I just believe

02:33:04  20 that's not what the law ought to be.  There is no more

21 powerful person on the planet than a Federal District

22 Judge.

23         THE COURT:  Yes, there is.

24         MS. PASTORINI:  Judge, they --

02:33:14  25 THE COURT:  The prosecutor.

1          MS. PASTORINI:  Really?  I would --

2          THE COURT:  A District Attorney, or United

3   States Attorney can destroy lives by simply calling a press

4   conference and announcing an investigation about which they

02:33:27  5   don't know anything, or they can do like those fellows in

6   New York.  Spitzer, I think was his name, announcing an

7   investigation into some giant company, and then the lawyers

8   for the company, well, you know, this doesn't seem to make

9   any sense, could we work this out?  Give the State of New

02:33:49  10  York $10 million.  There is a name for that.  It's called

11  extortion.  But your defense to a prosecutor is very

12  minimal.

13          MS. PASTORINI:  Judge, I would also point out

14  that -- I mean, you -- a Federal Judge can subpoena the

02:34:09  15  president of the United States, as in the Richard Nixon

16  case.  There is un -- it is unlimited power, but they tie

17  your hands, and they say we are not going to give you the

18  power to go below ten on the one case, and two on the

19  other.

02:34:22  20          I just think that that's -- to give

21  somebody such power and trust with such knowledge and

22  integrity, to go behind and say, but we're not going to

23  give you any latitude in a case like this, I just -- I

24  mean, it's bad enough that it is a ten-year mandatory

02:34:37  25  minimum.  It's bad enough it's a two-year.  But to not even

1   let them run concurrently, to me, is just outrageous.

2               It should be a decision of this Honorable

3   Court and not of -- not of some guideline, or some statute.

4   It should be discretion.  It should be your -- you know,

02:34:56   5   should be yours, and not -- not -- not have your hands tied

6   to these things.

7               And that's -- you know, I could go on for

8   a while but I think you got my point, and I know that.  I

9   don't want to waste the Court's time.  But, thank you,

02:35:09   10   Judge, for hearing me.

11         THE COURT:  There are occasions when I am

12   instructing the jury on the law, I do stop and remind them

13   that I didn't write this stuff.  I am obliged to apply it.

14               These are not the laws I might write.  And

02:35:33   15   -- but, that's the way the system works.  When we get a

16   law, we obey it.  Well, some of us do.

17               I had ruled you needed a search warrant

18   for cell tower stuff for two years before the Supreme Court

19   agreed with me.  And there are some things seem obvious.

02:36:01   20         MS. PASTORINI:  Judge, I just hope that one

21   day -- one day -- they're starting to soften these harsh,

22   harsh sentencing rules, and I just hope that just like the

23   first step back that something comes out that at some point

24   will give Mr. Johnson some relief from two mandatory

02:36:16   25   minimums, when he did everything in his power to help the

1  government but they couldn't go anywhere with it.  They --

2  unless it lead in their little guidelines to, you know, to

3  somebody else getting charged, or some evidence to tell

4  them something they didn't know, and half the time you

02:36:34   5  wonder, did they really know all this or did they just say

6  they knew all this?  And you never know.

7            But the bottom line is, even though he did

8  everything he could to try to help them in every way

9  possible, you know, they just said it is not good enough.

02:36:46  10  Not yet.  Not good enough.  Maybe you can do something

11  better somewhere down the line.  But anyway...

12            THE COURT:  Are we talking about the downward

13  departure?

14            MS. PASTORINI:  Yes, sir.

02:36:58  15            THE COURT:  I'm not sure Mr. Chu is prepared to

16  defend that at the moment, but there would be a point at

17  which the government's declination to give credit for it

18  would be irrational, and I would accept that.  But, I

19  certainly wouldn't expect it from Mr. Chu, or do I have any

02:37:29  20  hard data from anybody, always, to evaluate that.

21            MS. PASTORINI:  I understand.  Thank you, Your

22  Honor.

23            THE COURT:  Mr. Chu, anything else before I

24  talk to Mr. Johnson?

02:37:46  25            MR. CHU:  No, Your Honor.  Thank you.

1          THE COURT:  Mr. Johnson --

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  -- anything you want to tell me?

4          THE DEFENDANT:  First off, I want to -- I want

02:37:59   5 to apologize to my family for putting them through this,

6 and I also want to thank them for being there to support

7 me.  And I want to thank you for giving me this moment to

8 speak right now.

9          THE COURT:  Wait, Mr. Johnson.  It's some of

02:38:16  10 those people out there?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Turn around and face them.  Now

13 tell them you're sorry.

14          THE DEFENDANT:  I want to thank you guys for

02:38:25  15 being here to support me, and I want to apologize to y'all,

16 for putting you through this.

17          THE COURT:  I want y'all to love him, but don't

18 make excuses for him.  He knew what he was doing.  He did

19 it.  So help him, but helping him isn't pretending he

02:38:49  20 didn't do serious wrong.

21          You might add one more arrow to your

22 quiver of opposition to excessive sentences, and that is

23 every prison guard we hire is a school teacher we can't

24 afford.  And, somehow, I would rather spend more money on

02:39:35  25 them at 6 than way bunch of money on them at 26.  It would

1  just be so simple if Congress would send me a postcard and

2  asked me what I wanted them to do.

3              Check on that, Mr. Chu.  I think there is

4  something wrong with the mails.

02:39:57  5              MR. CHU:  Yes, sir.

6              THE COURT:  Mr. Johnson --

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  -- I sentence you to 120 months on

9  Count 1S, and followed by 24 months on Count 2S, to be

02:40:23  10  served consecutive.  No probation.  Three years of

11  supervised release on 1, and one year on 2, for a total of

12  3, because they will be concurrent.  No fine.  $294,152.32

13  in restitution.  That money is payable $139,624 to the

14  Internal Revenue Service; $88,776.84 to Great Southern

02:41:50  15  Bank; $15,000 to Compass Bank; $50,751.48 to the First

16  National Bank of Omaha.  And there are two $100

17  assessments.

18              Mr. Chu?

19              MR. CHU:  Move to remit, Your Honor.

02:42:21  20              THE COURT:  Granted.  Thank you.

21              Mr. Johnson, during your supervised

22  release -- do you know how that works?  It's like

23  probation, after you do the time.  Is this your first

24  federal?

02:42:52  25              THE DEFENDANT:  Yes, sir.

1          THE COURT:  It's sort of like if you did six

2   years, and then they paroled you for the rest, only we

3   don't do that.  We make you serve the full-time and then

4   you get a little bit.  So for three years after you're

02:43:08   5   released, you will still be under my supervision.

6                    And the terms of that are you won't commit

7   another crime, and that doesn't mean a traffic ticket, but

8   don't get one of those either because that's dangerous.

9   You will give hair, DNA, skin, blood, urine, any sample

02:43:37  10   that the probation officer orders.

11                   Then, obviously, there's a federal law

12   that says it's illegal for you to possess, control a

13   firearm, parts of a firearm, ammunition, or a bomb.  Got

14   that?

02:43:57  15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  That's -- that is repetitive, and

17   it is also illegal in Texas, and I suspect 49 other states.

18                   You will attend, cooperate

19   enthusiastically and politely with any program for drug

02:44:21  20   abuse, or anger management, or anything else that the

21   probation officer decides you need.  Some of that should be

22   available in the prison.  No drugs without a prescription,

23   no alcohol, no smoking.

24                   Do you work out?

02:44:54  25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you take those pills to make you

2    real macho?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Well, you can't do it when you get

02:45:02   5    out either.  You can't open any bank accounts, charge

6    cards, borrow money, any of that stuff without, as they say

7    on television, the prior written consent of the probation

8    officer.

9               Do you have any questions?  You will get a

02:45:25   10   copy of it that goes on for pages.  Do you have any

11   questions about that?

12         THE DEFENDANT:  No, sir.

13         PROBATION OFFICER:  Your Honor, payment plan

14   for the restitution?

02:45:36   15        THE COURT:  You're not going to pay it all at

16   once, are you?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  $200 a month starting the third

19   month that you're -- after you're released.

02:46:02   20              You're fixing to go to prison for 12

21   years.  If you're thinking there is just no good side to

22   that -- and you are almost right -- there are several

23   things you can do in prison.

24              Mainly, at the bare minimum you can read.

02:46:24   25   You can keep yourself healthy.  You can take classes and

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 stuff.  But don't take classes that you think the

2 certificate will impress me because you got one in foot

3 rubs or something.  Take classes that will help you, make

4 you a better, stronger person when you get out, because you

02:46:47   5 put several impediments in your way.  You built some road

6 blocks around yourself between you and a job and all kinds

7 of things.

8                    So the better equipped you are, especially

9 showing that you did it under the worst possible

02:47:03   10 circumstances for going to school, that will be to your

11 credit.

12                    You get into prison because you made a bad

13 choice.  So let's start making good choices, so we can stay

14 out of the dump.  Hear me?

02:47:23   15                    THE DEFENDANT:  Yes, sir.

16                    THE COURT:  Any questions about anything?

17                    THE DEFENDANT:  No, sir.

18                    THE COURT:  Mr. Chu, anything else from the

19 government?

02:47:31   20                    MR. CHU:  No, Your Honor.  Thank you.

21                    THE COURT:  Ma'am?

22                    MS. PASTORINI:  No, Your Honor.

23                    MR. TRAN:  Nothing further, Judge.

24                    THE COURT:  You are not going to survive

02:47:44   25 appearing before some judges if you whisper to them.  Speak

1  up.

2             MR. TRAN:  Nothing further, Judge.

3             THE COURT:  It is not that hard.

4             I have actually been a Judge for 40 years

02:47:58  5  this year, if you add my state and federal service

6  together.  I have never killed a lawyer yet, so you can

7  relax.  Some walking wounded maybe but never actually

8  killed one.

9             And if I weren't a little bit scary, you

02:48:20  10  would want to come back too much.  All right.

11             THE CASE MANAGER:  Right to appeal.

12             THE COURT:  You have the right to appeal.  You

13  have a right to appeal with a lawyer appointed for you, and

14  to appeal without paying costs.  There is a statement about

02:48:40  15  that.

16             Please read it, if you understand it.

17             All right.  Mr. Johnson, anything?

18             MR. TRAN:  No, sir.

19             THE COURT:  Good luck to you, Mr. Johnson.

02:49:19  20             THE DEFENDANT:  Thank you, Your Honor.

21             MS. PASTORINI:  It was a pleasure as always.

22  Thank you.

23  (Concluded at 2:49 p.m.)

24

25

1              COURT REPORTER'S CERTIFICATE

2        I, Kathleen K. Miller, certify that the foregoing is a

3    correct transcript from the record of proceedings in the

4    above-entitled matter.

5

6    DATE:  Aug. 20, 2020        /s/     _Kathleen K. Miller

7                                Kathleen K. Miller, RPR, RMR, CRR

8

9

02:49:24   10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25